UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY M. HEALEY,<br>　　　　Plaintiff,<br><br>v.<br><br>ROBERT MURPHY, et al.,<br>　　　　Defendants.<br><br>and<br><br>EDWARD GIVEN,<br>　　　　Plaintiff,<br><br>v.<br><br>ROBERT MURPHY, et al.,<br>　　　　Defendants. | CIVIL ACTION<br>NO. 01-11099-NG<br><br><br><br><br><br><br><br><br>CIVIL ACTION<br>NO. 04-30177-NG |

GERTNER, D.J.

**MEMORANDUM AND ORDER RE MOTIONS FOR
PARTIAL SUMMARY JUDGMENT**
July 8, 2011

This matter is before the Court on the motions of the Department of Corrections ("DOC") defendants for partial summary judgment on the complaints filed by Jeffrey Healey ("Healey") and Edward Given ("Given"). For the reasons detailed herein, defendants' motions for partial summary judgment (**documents #315, 319**) are **GRANTED IN PART** and **DENIED IN PART** as follows.[1]

**I. MOTION FOR PARTIAL SUMMARY JUDGMENT ON JEFFREY HEALEY'S AMENDED COMPLAINT**

---

[1] Since the motions for summary judgment were filed, the plaintiffs have waived their claims for monetary damages. Consequently, the plaintiff Joel Pentlarge has no remaining claims and his complaint will not be discussed herein. In addition, the defense of qualified immunity raised by the individual defendants is no longer at issue, and will not be discussed.

The DOC defendants have moved to dismiss various counts of the Amended Complaint filed by Jeffrey Healey (document #45). Each challenged count will be addressed separately below.

### A. Count II: Breach of the Plan as an Enforceable Agreement

The DOC defendants have moved for summary judgment on Count II in which Healey asserts a claim for breach of the Amended Management Plan (the "Plan") (document #229 at Ex. X) based on a contract or quasi-contract theory. Healey does not challenge the dismissal of this Count and is prepared to proceed under Count I, in which he asserts claims for violation of the Plan as a court order. Therefore, the defendants' motion for summary judgment as to Count II is **GRANTED**.

### B. Count IV: Failure to Provide Adequate Treatment to Secure Release

The defendants have moved for summary judgment on that part of Count IV in which Healey claims that his confinement as a Sexually Dangerous Person ("SDP") at the Treatment Center is barred by the double jeopardy clause of the Fifth Amendment because, as Healey alleges, the defendants' failure to provide him with treatment necessary to rehabilitate him transforms his commitment into a "*de facto* life sentence without parole." This court agrees that Healey's double jeopardy argument is precluded by Seling v. Young, 531 U.S. 250 (2001), in which the Supreme Court rejected an "as-applied" challenge to a Washington State statute authorizing the civil commitment of sexually violent predators.

In Seling, the respondent claimed that the conditions of his confinement rendered the statute punitive as applied to him because they were so restrictive and incompatible with treatment that they resulted in his indefinite confinement. Id. at 262. Relying on the fact that

Washington State's Supreme Court had found the statute to be civil, the Supreme Court held that "[a]n Act, found to be civil, cannot be deemed punitive 'as applied' to a single individual in violation of the Double Jeopardy" Clause. Id. at 267. Significantly, the Court reasoned:

> an "as-applied" analysis would prove unworkable. Such an analysis would never conclusively resolve whether a particular scheme is punitive and would thereby prevent a final determination of the scheme's validity under the Double Jeopardy ... Clause[]. Unlike a fine, confinement is not a fixed event. As petitioner notes, it extends over time under conditions that are subject to change. The particular features of confinement may affect how a confinement scheme is evaluated to determine whether it is civil rather than punitive, but it remains no less true that the query must be answered definitively. The civil nature of a confinement scheme cannot be altered based merely on vagaries in the implementation of the authorizing statute.

Id. at 263 (internal citations omitted). The Court further found that permitting such a challenge "would invite an end run around the Washington Supreme Court's decision that the Act is civil in circumstances where a direct attack on that decision is not before this Court." Id. at 263-64.

Similar to the situation in Seling, the "highest State court [in Massachusetts] has already definitively construed [Mass. Gen. Laws ch. 123A] as civil." In re Dutil, 437 Mass. 9, 20 (2002); see also Commonwealth v. Bruno, 432 Mass. 489 (2000) (rejecting argument that Massachusetts civil commitment statute for sexually dangerous persons is punitive in intent or effect). "Thus, the specific conditions of [Healey's] confinement do not convert the statute from civil to punitive" and do not support a double jeopardy claim. See In re Dutil, 437 Mass. at 20.

For these reasons, the motion for summary judgment relating to the double jeopardy claim in Count IV of Healey's Amended Complaint is **GRANTED**. The remaining claims in Count IV for violation of Healey's Fourteenth Amendment right to substantive due process and for breach of the state law duty to maintain the Treatment Center for the care, custody, treatment

and rehabilitation of the plaintiff pursuant to Mass. Gen. Laws ch. 123A, § 2 shall proceed to trial.

### C. Count V: Claims Regarding the Wire Cage

In Count V, Healey claims that the restriction requiring SDPs to exercise in a wire cage when confined to the Minimum Privilege Unit ("MPU") deprives him of his right to substantive due process and constitutes cruel and unusual punishment in violation of the Eighth Amendment. For the reasons detailed herein, the motion for summary judgment is **GRANTED** with respect to the Eighth Amendment claim, but otherwise **DENIED.**

"'It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees.'" Mitchell v. Rice, 954 F.2d 187, 192 (4th Cir. 1992) (per curiam) (quoting Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983)). In the instant case, however, it is undisputed that Healey was never deprived of exercise or recreation, and that he was restricted to the cage only during times when he was confined in the MPU. See Healey Statement of Facts ¶¶ 29-30 (document #323). Furthermore, he has not alleged, and has not submitted any evidence to suggest, that he was denied movement for an extended period of time as a result of having to use the cage for exercise. See Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996) ("Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened."). Accordingly, the record, even when viewed in Healey's favor, does not support a conclusion that Healey was deprived of his Eighth Amendment rights.

The record is less clear with respect to Healey's claim, also included in Count V, that forcing him to exercise in the cage when confined in the MPU violates his right, as a civilly committed individual, to substantive due process. As the Ninth Circuit Court of Appeals determined in a similar context, "the Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objective." Pierce v. County of Orange, 526 F.3d 1190, 1211-12 (9th Cir. 2008). In the instant case, Healey has submitted evidence which, if believed, shows that the size of the wire cage does not allow for meaningful exercise. Healey Aff. ¶ 3 (document #325). Additionally, the defendants have not attempted to show what legitimate objective is being served by the use of the wire cage.

Moreover, "[d]etermining what constitutes adequate exercise requires consideration of 'the physical characteristics of the cell and [facility] and the average length of stay of the inmates.'" Pierce, 526 F.3d at 1212 (quoting Housley v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994)); see also Campbell v. Cauthron, 623 F.2d 503, 507 (8th Cir. 1980) (noting that "merely allowing the inmates to walk around in the narrow corridor between cells does not provide adequate exercise" to inmates confined in cells for more than sixteen hours per day). Accordingly, the question whether use of the wire cage deprived Healey of substantive due process must await further development of the facts concerning, *inter alia*, the average length of Healey's confinements in the MPU, the number of hours he has spent in a cell, the dimensions of the wire cage, and the justification, if any, for the lack of access to the yard.

### D.     Counts I, III and IV

The DOC defendants do not specifically seek summary judgment on Count I (violation of the Plan as a court order), Count III (claim for deliberate indifference based on withholding of

psychological care) or the remaining claims set forth in Count IV (substantive due process and breach of state law duty to maintain the facility for the care, custody, treatment and rehabilitation of the plaintiff). However, they have asked the Court to grant them summary judgment with respect to a number of issues relating to these claims. For the reasons detailed herein, defendants' motion for summary judgment as to these claims is **DENIED**.

### 1. Res Judicata and Statute of Limitations

The DOC defendants argue that Healey is barred by principles of res judicata from challenging the discontinuation of certain programs such as but not limited to the graphic arts and sewing programs, changes in property regulations applicable to the Treatment Center, the manner in which individuals from the Treatment Center are transported, and the failure to provide Healey with certain treatment alternatives. The defendants argue that these conditions were addressed or could have been addressed during the pendency of the consent decree litigation, to which Healey was a party, and cannot be relitigated here. Similarly, the defendants argue that Healey's claims about the discontinuance of certain programs are barred by the statute of limitations because the changes to those programs occurred more than three years before he filed suit. These arguments misconstrue the broader nature of Healey's claims and ignore the fact that circumstances have changed since the consent decrees were lifted in 1999. Moreover, the defendants are challenging facts, as opposed to claims, which Healey is using to illustrate the changes that have been made at the Treatment Center over time. For these reasons and the reasons detailed in the November 14, 2007 Report and Recommendation on Defendants' Motion to Dismiss the Second Amended Complaint, the motion for summary judgment on the basis of

res judicata and statute of limitations fails. See 11/14/07 Report & Rec. Defs.' Mot. to Dismiss Second Am. Compl. [hereinafter 11/14/07 Report & Rec.] 17-23 (document #148).

### 2. Standing

The defendants argue that to the extent Counts I, III and IV are predicated upon alleged deficiencies in the work opportunities, woodshop program or educational program at the Treatment Center, Healey lacks standing to challenge such deficiencies because he cannot show that he has a personal interest in these programs. Specifically, they contend that Healey cannot show that he has been injured due to the absence of or inadequacies in such programs because Healey stopped participating in the woodshop due to a physical condition, admitted that there is no educational class that he wants to attend, but has been unable to attend, and admitted that he does not want a job at the MTC.

Healey argues that he is not seeking specific work, woodshop or educational opportunities, but instead is seeking an order compelling specific performance of the Plan as a whole, which aims to provide "a meaningful array of educational and vocation training, which 'are an integral part of the treatment program.'" Healey Opp. Mem. 17 (document #317) (quoting Amended Management Plan 23). He argues that he has an interest in ensuring that there is a sufficient "array of educational, vocational, recreational, and social programs to complement and promote a therapeutic environment." Id. Furthermore, Healey has presented an Affidavit in which he attests, without challenge, that today he would seek employment and participate in certain educational classes if such opportunities were available. Healey Aff. ¶¶ 5-6. Accordingly, Healey has raised a genuine issue of fact with respect to this issue, and his claims will not be dismissed before trial due to an alleged lack of standing.

### 3. Confidentiality

The defendants argue that Healey has failed to state a claim regarding confidentiality. However, Healey has not asserted any such claim. Instead, he plans to introduce expert testimony regarding the current best practices for the treatment of sexually dangerous individuals. According to Healey's expert, Dr. Saleh, those practices include pharmacological treatment for paraphilic sex offenders and confidential psychotherapy. See Healey Opp. Mem. 11. The defendants have not shown that such testimony is inappropriate.

### 4. Treatment for Endocrine Disorder

Finally, the defendants are seeking summary judgment with respect to the treatment of Healey's endocrine disorder. Again, Healey has asserted no such claim. To the extent the defendants are challenging the admissibility of facts relating to the treatment of his endocrine disorder, it is unclear how Healey will attempt to use such facts. Therefore, any such challenge should be made in the context of the trial.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT ON GIVEN'S SECOND AMENDED COMPLAINT

The DOC defendants have moved to dismiss various counts of the Second Amended Complaint filed by Joel Pentlarge (who has dismissed his claims) and Edward Given (document #107). Each challenged count will be addressed separately below.

### A. Count I: Conditions of Confinement

In Count I, Given claims that he is being held "in conditions of confinement which far exceed the least restrictive alternative, and which are substantially more restrictive and punitive than the conditions under which the plaintiffs were held or would be held were they in prison."

Second Am. Compl. ¶ 11 (document #107). This court has construed Count I as stating a claim for violations of the plaintiff's substantive due process rights. Therefore, at issue is whether "conditions at the Center are punitive or otherwise unrelated to care, custody, treatment and rehabilitation[.]" 11/14/07 Report & Rec. 24.

The defendants challenge this claim item by item. However, this approach misconstrues the nature of the claim, which is that overall conditions at the facility are punitive and unrelated to the purposes of commitment. The summary judgment record contains evidence showing, among other things, that the Treatment Center is seriously overcrowded, leaks in the roof are a "serious problem," SDPs sometimes urinate and defecate in the yard due to the lack of a bathroom there, there has been inadequate refrigeration of food, and there are few educational and work opportunities. Although these and other conditions may not state a due process claim when considered individually, when taken together, they are sufficient to create a triable issue as to whether conditions at the Center violate or have violated the plaintiff's due process rights. See, e.g., Cote v. Murphy, 2005 WL 2708221, at *1 (1st Cir. Oct. 21, 2005) (noting that while double-bunking of sex offenders "is not a per se violation of due process," "in rare cases [it] might amount to an unlawful practice when combined with other adverse conditions").

The defendants also argue that Given is barred by the statute of limitations from pursuing a claim based on an alleged altercation with a correction official in 2000, or from pursuing a claim based on having to wait over a year to receive his dentures. These are not separate claims, but facts that relate to the overall conditions at the facility. Even if these facts are deemed to be inadmissible, their exclusion would not defeat the plaintiffs' due process claim.

For these reasons defendants' motion for summary judgment is **DENIED** with respect to Count I.

B.     **Count II:  Claims Relating to Telephones**

In Count II of the Second Amended Complaint, Given claims that the restrictions on telephone access at the Treatment Center, and the rates and commissions charged on his telephone calls, deprive him of his First Amendment and substantive due process rights, and violate state law.  The defendants are seeking summary judgment on these claims.  For the reasons detailed herein, the motion is **GRANTED IN PART** with respect to the state law claim but **DENIED IN PART** as to the First Amendment and substantive due process claims.

1.     **Claims Pursuant to § 1983**

"[F]ederal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends, and have recognized that there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment." Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (internal quotations and citations omitted).  This right is not unlimited, but rather is subject to reasonable security limitations.  See id.  For purposes of due process, "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees . . . ."  Bell v. Wolfish, 441 U.S. 520, 539 (1979).  At issue, therefore, is whether the telephone restrictions in place at the Treatment Center are arbitrary and purposeless or are reasonably related to a legitimate, non-punitive purpose.

The record shows that the telephone system was implemented in response to serious abuses that were occurring in connection with the previous system. Those abuses are detailed in the Plan. For example, but without limitation, the Plan describes that under the prior, direct dial system, the DOC "investigated numerous instances of nuisance and threatening telephone calls made to persons in the community." Plan at 40 (document #229 at Ex. X). Additionally, residents used the old system to carry out a number of fraudulent schemes. Id. Furthermore, because the old system placed no limits on where residents could direct calls, that system posed a direct threat to the security of the facility. Id. Accordingly, as stated in the Plan, the DOC decided to install a new system, which had recently been installed in other correctional facilities and which would require the use of a PIN number to make calls, restrict residents to ten designated personal telephone numbers plus five legal telephone numbers, and permit the DOC to record non-legal conversations. Id. at 41.

Despite the fact that the DOC provided justification for the new telephone system, the problems that it identified did not necessarily reflect problems at the Treatment Center. As indicated in Gilday v. Dubois, 124 F.3d 277, 280 (1st Cir. 1997), a case involving an inmate challenge to the telephone system, the problems that DOC was seeking to remedy when it installed the new system were occurring within the prison system generally. See Gilday, 124 F.3d at 280-81 (identifying telephone abuses within prison system as basis for DOC adoption of current telephone regulations). Therefore, the question whether the present system is reasonably related to security at the Treatment Center remains an open one and should be explored at trial.

This court recognizes, as the defendants point out, that the DOC attached a copy of the new telephone access policy to the Plan. Plan at Attachment 15. That policy, which consists of

the DOC's regulations on the use of telephones, includes the same restrictions that are contained in the current version of the regulations, except that the current regulations provide for fees or commissions on inmate calls that "shall be returned to the General Fund of the Commonwealth." Compare 103 CMR § 482.00 et seq, with Plan at Attachment 15. Nevertheless, the new telephone system had not yet been fully implemented at the Treatment Center at the time the consent decree litigation terminated. Given should have an opportunity to prove at trial why, following its implementation, the system is not reasonably related to a legitimate, non-punitive purpose. See Young v. Seling, 72 Fed. Appx. 657, 659 (9th Cir. 2003) (finding that if a civilly committed individual "was denied telephone access, particularly during times of familial emergencies, a constitutional violation could be found") (internal quotations omitted).[2] Moreover, given the fact that Given is entitled to present evidence regarding restrictions on telephone use in order to support his broader challenge to conditions at the Center, it is appropriate to consider his separate constitutional challenge to the telephone system based on a full factual record.

### 2. State Law Claim

The DOC defendants have also moved for summary judgment on Count II to the extent that it states a state law claim based on the commission charged for telephone use at the Treatment Center. The precise nature of the plaintiff's state law claim is unclear from the Second Amended Complaint. Moreover, Given has not presented any arguments in opposition

---

[2] The record contains evidence showing that due to restrictions on telephone use, Pentlarge was unable to call his dying brother or contact his father at the hospital by telephone after his father underwent open heart surgery. Tennen Aff, Ex. 4, at 63-64 (document #329).

to the DOC's motion for summary judgment on the state law claim. Under these circumstances, any such claim is deemed waived.

The record on summary judgment also fails to support a state law claim on the merits. Assuming, as the defendants have done, that the plaintiff is attempting to challenge the commission charged on telephone use as an unlawful tax, the plaintiff has failed to present evidence showing that the commissions constitute a tax rather than a permissible user fee. See Doe v. Sex Offender Registry Bd., 459 Mass. 603, 610-14 (2011) (distinguishing taxes from fees imposed by a government entity and explaining that "the fact that fees are deposited into a general fund, instead of a fund for a designated purpose, . . . is not decisive" of the issue whether a charge constitutes a fee or a tax) (internal quotations and citations omitted). "[A]n agency may charge fees that offset general agency expenses, as well as specific costs of the service in relation to each person charged a fee." Baker v. Dep't of Envtl. Prot., 39 Mass. App. Ct. 444, 446 (1995). For this reason as well, the defendants are entitled to summary judgment with respect to any state law claim asserted in Count II.

### C. Count V: Violation of Minimum Standards of Fitness for Human Habitation

In Count V of the Second Amended Complaint, Given claims that certain conditions at the facility, including double bunking, restrictions on toilet flushing, lack of toilet facilities in the yard, and major leaks in the roof, do not meet minimum standards for human habitation set forth by the Massachusetts Department of Public Health in the State Sanitary Code, 105 CMR § 410.00 et seq., and deprive him of his right to substantive due process. As described above with respect to Count I, the plaintiff has established a triable issue as to whether conditions at the Treatment Center have violated his substantive due process rights. The defendants have moved

for summary judgment on Count V to the extent it states a claim for violations of the State Sanitary Code, and Given has not opposed this portion of the motion. As detailed herein, the motion for summary judgment as to Count V is **GRANTED IN PART** as to the state law claim, but **DENIED IN PART** as to the substantive due process claim.

The regulations comprising the State Sanitary Code were promulgated by the Department of Public Health ("DPH") pursuant to Mass. Gen. Laws ch. 111, § 127A. The Massachusetts Attorney General has rendered an opinion that "the Commonwealth and its agencies are exempt from [§ 127A.]." Op. Atty. Gen., Apr. 25, 2001. The plaintiffs have submitted no contrary authority, and they do not dispute that the DOC is an agency of the Commonwealth.[3]

Additionally, § 127A provides no general private right of action to enforce the State Sanitary Code. See Loffredo v. Ctr. for Addictive Behaviors, 426 Mass. 541, 546-47 (1998) (concluding that state statute provided no private cause of action where there was no evidence of legislative intent to do so). To the extent the statute authorizes the filing of certain types of actions, such actions must be brought in the Massachusetts superior, housing or district courts. See Mass. Gen. Laws ch. 111, § 127A (authorizing enforcement action by DPH and providing that "[t]he superior court shall have jurisdiction in equity to enforce the provisions of said code"); id. § 127C (stating that a residential tenant may bring a petition "in a district court, housing court, or superior court"). Therefore, there is no basis for this court to hear Given's claim for violation of the State Sanitary Code.

---

[3] There are DPH regulations, set forth at 105 CMR § 451.00 et seq., which apply to state correctional facilities. The record on summary judgment shows that the Department of Public Health conducts regular inspections of the Treatment Center pursuant to those regulations. See Tennen Aff.. Ex. 3. However, Given does not contend that he is seeking relief thereunder.

### III. Issues for Trial

The following claims remain for trial:

1. Healey's claim that the defendants have violated the Amended Management Plan as a court order (Count I);

2. Healey's claim that the defendants' conduct in withholding psychological care constitutes deliberate indifference in violation of his Eighth Amendment rights (Count III);

3. Healey's claims that the defendants have deprived him of his Fourteenth Amendment right to substantive due process, and breached their duties under Mass. Gen. Laws ch. 123A, § 2, by failing to provide him with adequate sex offender treatment (Count IV);

4. Healey's claim that forcing him to exercise in the wire cage deprives him of his Fourteenth Amendment right to substantive due process (Count V);

5. Given's claim that conditions at the Treatment Center fail to provide the "least restrictive alternative," which this court has construed as alleging a due process claim (Count I);

6. Given's claim that the telephone system in place at the Treatment Center violates his First Amendment and substantive due process rights. (Count II);

7. Given's claim for violation of his Fifth Amendment rights based on waiver of confidentiality (Count III);

8. Given's claim that the defendants' failure to provide adequate sex offender treatment deprives him of his Fourteenth Amendment substantive due process rights (Count IV); and

9. Given's claim that the defendants' failure to provide them with accommodations that meet the minimum standards for human habitation deprives him of his Fourteenth Amendment right to substantive due process (Count V).

**SO ORDERED.**

**Date: July 8, 2011**          */s/ Nancy Gertner*
                                **NANCY GERTNER, U.S.D.J.**